UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT; WILDEARTH GUARDIANS,<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF LAND MANAGEMENT,<br><br>Defendant,<br><br>R.N. FULSTONE CO.; FLYING M. RANCH<br><br>Intervenor-Defendants. | No. 2:10-cv-02896 KJM KJN<br><br><br>ORDER |

      The court in this order determines what remedy, if any, is warranted for the Bureau of Land Management's (BLM) violation of the National Environmental Policy Act (NEPA), which this court found in its September 4, 2103 ruling on the cross-motions for summary judgment in this case. (Order, ECF 100.) On November 22, 2013 the court held a hearing on this matter, at which certified law student Evan Stein and attorney Deborah Sivas appeared for plaintiffs, J. Earlene Gordon appeared for defendant, and Brandon Jensen and Suellen Fulstone appeared telephonically for intervenors. For the reasons below, the court finds BLM's NEPA violation is harmless error but for its partial frustration of NEPA's purpose of engendering public

/////

1

confidence in agency decision-making. Accordingly, the court orders BLM to file an errata containing the omitted citations.

I.   BACKGROUND

The court in its order on the cross-motions for summary judgment found BLM violated NEPA because it did not provide citations in the Environmental Assessment (EA) to the studies upon which it relied in its analysis of the impacts of the grazing decisions on the sage grouse and pygmy rabbit. (Order at 19 ("[T]he analysis of impacts on sage grouse does not specify which references it relies on to make conclusions about the impact of the guidelines on sage grouse nesting areas."); *id.* at 21 ("Because the Final EA does not include references to scientific studies supporting the analysis of anticipated impacts on the pygmy rabbit, this section of the Final EA is defective.").)

The court found this omission was a violation because NEPA requires agencies to ensure professional and scientific integrity by setting forth the methodologies used and making "explicit reference by footnote [to] the scientific and other sources relied upon for conclusions in the statement." *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1160 (9th Cir. 2006), *abrogated on other grounds by Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) (citing 40 C.F.R. § 1502.24). Whether "explicit reference by footnote" to the "scientific and other sources relied upon" is required in an EA as well as an Environmental Impact Statement (EIS) is an open question in this Circuit. *See Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1019 (9th Cir. 2012) ("By its terms, this regulation only applies to preparation of an EIS, but the Forest Service does not dispute that this scientific integrity requirement applied to their EA. Therefore, we assume without deciding that this requirement does in fact apply to the Angora Project EA."). Because defendant-intervenors did not dispute that this requirement applies to the EA at issue in this case, the court considered whether BLM satisfied the requirement and found BLM had not.

The court ordered supplemental briefing on the remedy for this NEPA violation. Plaintiffs filed their opening brief on September 27, 2013. (ECF 101.) Defendant-intervenors

/////

filed a single response on November 8, 2013 (ECF 106), and plaintiff's filed a reply on November 15, 2013 (ECF 107).

II.     STANDARD

If a court reviewing an agency action under the Administrative Procedure Act (APA) finds a violation of NEPA it must take "due account" of the harmless error rule. *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1487 (9th Cir. 1992) (citing 5 U.S.C. § 706). In the administrative rulemaking context, a court must exercise "great caution" in applying the harmless error rule; because an agency "could always claim that it would have adopted the same rule even if it had complied with the APA procedures," harmless error analysis must "focus on the process as well as the result." *Id.* However, outside of the rulemaking context, the court's "review for harmless error is more demanding of plaintiffs." *Id.* The party challenging the agency action has the burden to prove prejudice. *See Drakes Bay Oyster Co. v. Jewell*, 729 F.3d 967, 985 (9th Cir. 2013) (requiring plaintiff demonstrate prejudice from claimed NEPA violations).

A NEPA violation is not harmless when it "prevent[s] a proper, thorough, and public evaluation of the environmental impact of the Project." *Lands Council v. Powell*, 395 F.3d 1019, 1037 n.25 (9th Cir. 2004); *see also Sagebrush Rebellion, Inc. v. Hodel,* 790 F.2d 760, 764–65 (9th Cir.1986) (agency's failure to provide notice and comment is harmless only where the agency's mistake "clearly had no bearing on the procedure used or the substance of decision reached") (internal citations and quotation omitted).

However, agency error has been found harmless when the NEPA violation was "technical." *Drakes Bay Oyster Co.*, 729 F.3d at 985 (finding harmless error where violations were "the Secretary's failure to publish the EIS more than thirty days before he made his decision and the Secretary's framing the extension denial in the form of a Decision Memorandum rather than a Record of Decision"). "A 'technical deficiency' [in an EIS] is an omission that does not 'frustrate' NEPA's twin goals of ensuring that the 'decision-maker was otherwise fully informed as to the environmental consequences' of the proposed action and that 'members of the public had sufficient information' with respect to the omitted topic." *Sierra Club v. Bosworth*, 199 F. Supp.

2d 971, 986 (N.D. Cal. 2002) (quoting *Laguna Greenbelt, Inc. v. Dep't of Transp.*, 42 F.3d 517, 527 (9th Cir. 1994)).

III.     ANALYSIS

Plaintiffs argue the court should vacate and remand the EA, Finding of No Significant Impact (FONSI), and Final Decision because this is the ordinary remedy when an agency action does not comply with the APA. (ECF 101 at 2–3.) In light of NEPA's intent, plaintiffs argue vacatur and remand are important for three reasons. First, BLM may find some revisions necessary when it reviews the studies relied on for the EA. (*Id.* at 3–4.) Second, if the U.S. Fish and Wildlife Service designates the sage grouse as protected under the Endangered Species Act by the end of 2013, then BLM will need to modify its analysis accordingly. (*Id.* at 4.)[1] Third, if the court does not set aside the FONSI and Final Decisions along with the EA then plaintiffs will, they contend, be left without a remedy during the remand process because remand orders are not final with respect to non-agency parties for purposes of appeal. (*Id.*) Finally, plaintiffs request the court impose deadlines for BLM's revisions that precede the June 2014 grazing season. (*Id.* at 5.)

Defendants contend that the court found "BLM did not act arbitrarily and capriciously with regard to the alternatives it considered in the EA" and that BLM took a "hard look" at the anticipated impacts of grazing on the sage grouse and pygmy rabbit. (ECF 106 at 3.) Defendants argue none of the elements required to set aside an agency action are met because scientific authorities were clearly considered in the decision-making process. (*Id.* at 3–5.) Therefore, assert defendants, BLM's omission of citations was a non-prejudicial, technical error that falls within the APA's harmless error rule. (*Id.*) Finally, defendants request that, if a remedy is required, the court allow defendants to fix their technical error through an errata without setting aside the EA. (*Id.* at 5.)

/////

---

[1] Since the hearing in this matter, the U.S. Fish and Wildlife Service (USFWS) recently proposed to (1) list the Bi-State distinct population segment of greater sage grouse as threatened under the Endangered Species Act (ESA), 78 Fed. Reg. 64358 (Oct. 28, 2013), and (2) designate critical habitat for these sage grouse under the ESA, 78 Fed. Reg. 64,328 (Oct. 28, 2013).

1         In their reply, plaintiffs argue the NEPA violations are not harmless. (ECF 107 at 2.) Plaintiffs assert, as they reiterated at hearing, that the public cannot be sure the BLM rigorously evaluated the available science because of the lack of sources, and in the case of the pygmy rabbit, because BLM now admits it did not even consider many sources beyond the professional opinion of one BLM scientist. (*Id.* at 2–4.) Further, plaintiffs aver that without citations to specific sources for the EA's analysis, "the public cannot know what information BLM gleaned from which sources, or how BLM arrived at its conclusions." (*Id.*) Finally, plaintiffs maintain BLM should account for the new information, including U.S. Fish and Wildlife Service's proposal to designate the sage grouse as threatened. (*Id.* at 5.)

         The court concludes below that BLM's NEPA violation was largely harmless error. However, because the omission of citations disserves NEPA's purpose of engendering public confidence in administrative decision-making, the court orders BLM to issue an errata with the missing citations.

         BLM's omission of footnotes to the scientific studies it relied upon in reaching its relevant conclusions in the EA was largely harmless error based upon the facts of this case. First, BLM's Final Decisions are not a rulemaking. *See* 5 U.S.C. § 551 (defining rulemaking and adjudication); *see also* ROBERT L. GLICKMAN, NEPA LAW & LITIG. § 3:2 (2d ed. 2013) ("Agency decision making under NEPA is technically an [informal] 'adjudication' as that term is defined by the [APA]"); *Riverbend Farms, Inc.*, 958 F.2d at 1484 (evaluating a formal rulemaking that requires a published notice in the *Federal Register*). Therefore, this court's review for harmless error is "more demanding of plaintiffs," *Riverbend Farms, Inc.*, 958 F.2d at 1487, and plaintiffs bear the burden of proving prejudice, *see Drakes Bay Oyster Co.*, 729 F.3d at 985.

         Second, the fact that BLM omitted footnotes to citations in its impact section of the EA, as opposed to an EIS, has some significance. An EA serves a different purpose than an EIS; only the latter explicitly is meant to "provide full and fair discussion of significant environmental impacts" and to "inform decision-makers and the public of the reasonable alternatives which would avoid or minimize adverse impacts or enhance the quality of the human environment." 40 C.F.R. § 1502.1. An EA, in contrast, serves in part to "[b]riefly provide

5

1  sufficient evidence and analysis for determining whether to prepare an environmental impact
2  statement or a finding of no significant impact." 40 C.F.R. § 1508.9(a)(1).

3  Third, even when holding the EA up to the more rigorous EIS standard, BLM's
4  omission did not frustrate NEPA's twin goals of ensuring that "the decision-maker was otherwise
5  fully informed as to the environmental consequences of the proposed action" and "members of
6  the public had sufficient information with respect to the omitted topic." *Sierra Club*, 199 F.
7  Supp. 2d at 986 (internal citation and quotations omitted).

8  Plaintiffs' contention that BLM's NEPA violation is prejudicial because it exposes
9  BLM's failure to make connections between its analysis and scientific studies is in tension with
10 this court's order on the cross-motions for summary judgment. This court found that BLM did
11 consider scientific sources as required; BLM simply did not cite the sources that it considered.
12 (Order at 24 ("In sum, the court finds BLM complied with all but one of its NEPA obligations:
13 BLM did not comply with the requirement to reference scientific studies when it considered the
14 impacts of renewing the grazing permits on the sage grouse and pygmy rabbit.").) The court also
15 held that the EA adequately addressed the possible negative impacts of the Final Decisions on the
16 sage grouse and pygmy rabbit. (*Id.* at 19 ("Plaintiffs have not identified any potential negative
17 impacts on sage grouse habitat that were not addressed in the Final EA."); *id.* at 20 ("[T]he court
18 cannot say that BLM ignored any particular potential danger posed to the pygmy rabbit. Because
19 the anticipated impacts to vegetation in the allotments were low, it was reasonable for BLM to
20 conclude that the pygmy rabbit would be minimally affected.").)

21 Moreover, BLM referenced studies in the analysis of the impacts on the sage
22 grouse and the pygmy rabbit, though it did not provide footnotes to identify the specific studies.
23 (*See, e.g.*, Doc. 49: AR 1326[2] (referencing multiple telemetry studies).) BLM also provided a list
24 of references at the end of this section of the EA. (Doc. 49: AR 1329–1330.)
25 /////

---

26 [2] "Doc." refers to the document number BLM assigned to the documents that make up the
27 administrative record. A copy of the administrative record ("AR") was lodged with the court.
   (ECF 39, 58, 78.) A citation to "Doc." followed by a citation to "AR" references the document
28 number in which the cited AR page appears.

6

1            Most importantly, the EA adequately explained BLM's reasoning for its
2    conclusion about the impacts of the Final Decisions such that the APA's and NEPA's goals of
3    providing the public an opportunity for meaningful comment were met.  *See, e.g.*, *Riverbend*
4    *Farms, Inc.*, 958 at 1486 ("It is a fundamental tenet of the APA that the public must be given
5    some indication of what the agency proposes to do so that it might offer meaningful comment
6    thereon.").  As plaintiff Western Watershed's comment letter on the Draft EA illustrates, the EA,
7    even without its footnotes to specific studies, clearly set forth its reasoning in a way that
8    permitted plaintiff to meaningfully and constructively comment.  For example, plaintiff noted the
9    draft EA did not analyze impacts to the pygmy rabbit (Doc. 53: AR 1378), which oversight BLM
10   corrected in the Final EA, and cited studies BLM should consider (Doc. 53: AR 1378–1380.)
11   Plaintiff also engaged directly with the EA's analysis concerning the sage grouse, again citing
12   studies for BLM to consider (Doc. 53: AR 1377–1378), and provided four alternative decisions
13   including  reducing stocking rates (*see, e.g.*, Doc. 53: AR 1374).  BLM, in the Final EA, provided
14   brief explanations in response to plaintiff's comments detailing why BLM eliminated plaintiff's
15   four additional proposed alternatives.  (Doc. 49: AR 1264–1268.)

16            This court's conclusion that BLM's NEPA violation is largely harmless error fits
17   comfortably within Ninth Circuit precedent.  In *Laguna Greenbelt, Inc.*, 42 F.3d at 527, the
18   plaintiff argued that the Department of Transportation's omission in its EIS of the fact that 1.7
19   acres of an ecological reserve would be taken for toll-road right of way was prejudicial error
20   under NEPA.  The court found this omission, in light of other allusions to some type of taking of
21   land in the reserve, to be a harmless technical error because it "did not frustrate NEPA's goal of
22   ensuring that relevant information is available to the wider audience participating in agency
23   decision-making."  *Id.*  It was clear that the public "had sufficient information regarding the
24   tollroad's impact on the reserve to submit comments upon it . . . ."  Similarly, in *National Forest*
25   *Preservation Group v. Butz*, 485 F.2d 408, 412 (9th Cir. 1973), the court found the agency's
26   failure to prepare a formal EIS was not prejudicial in part because the Forest Service's "written
27   explanation of [its] decision to those who had expressed concern about the [action] shows that [it]
28   did consider environmental factors."  Moreover, the court noted that although the EIS, which the

7

agency finally prepared after it issued its decision, "like most of its fellows, can be improved by hindsight and sophisticated editing, we believe that the statement satisfied the intent of the statute." *Id.*

All of the above said, the lack of citations disserves NEPA's purpose of engendering public confidence in administrative decision-making in the EA here. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989) ("Publication of an EIS, both in draft and final form . . . gives the public the assurance that the agency has indeed considered environmental concerns in its decision-making process."). Accordingly, the court orders BLM to supplement the EA with an errata containing the omitted citations. Additionally, in light of BLM's counsel's representation at hearing that BLM can revisit the EA even though it is final, the court orders BLM to file a sworn declaration attesting that the addition of footnotes to the scientific sources, in BLM's opinion, does not alter the EA's conclusion as to the impacts of grazing on the pygmy rabbit and the sage grouse.

IV.     CONCLUSION

For the foregoing reasons, the court orders BLM to file within fourteen days an errata containing the citations to the scientific sources it relied upon in pages 89–92 of the Final EA (Doc. 49: AR 1326–1329). BLM shall also file a sworn declaration, as described above, with the errata attached, no later than thirty days from the date of this order.

IT IS SO ORDERED.

DATED: January 8, 2014.

_____
UNITED STATES DISTRICT JUDGE